UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN M.,

                          Plaintiff,

                                                          1:18-CV-0623
v.                                                       (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

KIRK & TEFF, LLP                                RALPH M. KIRK, ESQ.
   Counsel for Plaintiff
10 Westbrook Lane
P.O. Box 4466
Kingston, New York 12402

SOCIAL SECURITY ADMINISTRATION                  CATHARINE L. ZURBRUGG, ESQ.
OFFICE OF GENERAL COUNSEL–REGION II             Special Assistant U.S. Attorney
   Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

    Currently before the Court, in this action filed by Susan M. ("Plaintiff") against the

Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. § 405(g), are (1)

Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on

the pleadings.  (Dkt. Nos. 9, 12.)  For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1953, making her 61 years old at the amended alleged onset date and 64 years old at the date of the ALJ's decision.  Plaintiff reported having earned a bachelor's degree.  The vocational expert found that Plaintiff had past work as an administrative assistant. Plaintiff alleges disability due to arthritis, Hashimoto's thyroid disorder, psoriasis, fibromyalgia, and Epstein Barr virus.

### B.      Procedural History

Plaintiff applied for Disability Insurance Benefits on June 17, 2015, alleging disability beginning January 12, 2013, which she amended (through her attorney at the hearing) to November 13, 2014.  Plaintiff's application was initially denied on August 26, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ Sharda Singh on August 21, 2017.  On October 31, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 10-18.)[1]  On April 27, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 10-18.)  First, the ALJ found that Plaintiff was insured for benefits under

---

[1]      The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Title II until December 31, 2015.  (T. 12.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date.  (*Id.*)  Third, the ALJ found that Plaintiff has severe impairments of osteoarthritis of the hips, sensory neuropathy, psoriatic arthritis variously characterized as seronegative rheumatoid arthritis, degenerative disc disease of the cervical and lumbar spine, and hypothyroidism; she also found that left sensorineural hearing loss is not a severe impairment.  (*Id.*)  Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 13-14.)  Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 11.14 (peripheral neuropathy), and 14.09 (inflammatory arthritis).  (*Id.*)  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes or scaffolds.  She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She is limited to frequent fine and gross hand manipulations bilaterally.  She cannot perform overhead reaching with the upper extremities.

(T. 14.)  Sixth, the ALJ found that Plaintiff is able to perform her past relevant work as an administrative assistant as it is generally performed in the national economy.  (T. 18.)  The ALJ therefore concluded that Plaintiff is not disabled.

### D.     The Parties' Briefing on Their Motions

#### 1.     Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes three arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 9, at 12-22 [Pl.'s Mem. of Law].)  First, Plaintiff argues that the ALJ erred in assessing her RFC and in failing to appropriately evaluate her reported symptoms.  (*Id.* at 12-

17.)  More specifically, as to her RFC, Plaintiff argues that the ALJ ignored the objective medical and other evidence that contradicted the ALJ's finding that Plaintiff could frequently use her hands and fingers, and that the ALJ improperly relied on her own lay opinion based on the fact that she rejected all of the opinions from the medical sources.  (*Id.* at 13-15.)  As to the evaluation of symptoms, Plaintiff argues that the ALJ erred in relying almost exclusively on an assessment of the frequency, duration, and severity of her hand and arm symptoms, and in failing to discuss the other relevant factors or to explain why Plaintiff's reports of her symptoms were not credited.  (*Id.* at 13, 16-17.)

Second, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff's past relevant work as an administrative assistant was a composite job.  (*Id.* at 17-21.)  More specifically, Plaintiff argues that (a) the ALJ failed to indicate which of her administrative assistant positions (with a furniture store or a real estate company) she was considering as past relevant work, and (b) the ALJ failed to address the fact that Plaintiff's testimony as to her job duties indicated that some of those duties do not correspond with the description in the Dictionary of Occupational Titles ("D.O.T.") for administrative assistant, but rather are consistent with other jobs that are both above the sedentary exertional level.  (*Id.* at 18-19.)

Third, Plaintiff argues that the ALJ erred in failing to afford proper weight to the retrospective opinion from treating physician Riccardo Esposito, M.D., and failing to consider a retrospective opinion from treating physician Farah Ashraf, M.D., and that she breached her duty to develop the record by failing to, for example, send an interrogatory to Dr. Esposito to clarify what limitations in his opinion applied before the date last insured.  (*Id.* at 21-22.)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. (Dkt. No. 12, at 7-23 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ's RFC finding and evaluation of Plaintiff's symptoms are supported by substantial evidence. (*Id.* at 16-20.)  More specifically, as to the ALJ's RFC finding, Defendant argues that (a) the ALJ very clearly considered the medical and other evidence related to Plaintiff's hand and finger impairment and cited evidence supporting her conclusions, (b) under the regulations, RFC is ultimately an administrative assessment that is the responsibility of the Commissioner and the ALJ was not required to rely on any one medical opinion when making that finding so long as she relied on the objective medical evidence (which she did), (c) the ALJ provided good reasons for rejecting the relevant opinions and, in any event, the manipulative limitations included in Dr. Esposito's opinion are consistent with the ALJ's finding, and (d) the ALJ properly rejected portions of the opinions of the consultative examiners that were more restrictive because they were not supported by the evidence. (*Id.* at 7-14.)  As to the evaluation of Plaintiff's symptoms, Defendant argues that, although the ALJ was not required to enumerate all of the relevant factors in a strict way, the decision shows that the ALJ nonetheless considered those factors, particularly noting the ALJ's finding that Plaintiff's symptom reports were not wholly supported by the objective evidence. (*Id.* at 12-16.)

Second, Defendant argues that the Plaintiff's past relevant work is not a composite job. (*Id.* at 16-20.)  More specifically, Defendant argues that Plaintiff has conceded that her past relevant work did include, at least to some extent, the performance of administrative and office work consistent with the D.O.T. code for administrative assistant, and that therefore the ALJ's

characterization of her past relevant work as such was proper, regardless of whether she also performed other duties that Plaintiff admits are encompassed by other D.O.T. codes. (*Id.* at 16-18.) Defendant argues that a job is not considered a composite job if all the different parts of the job are classified by the D.O.T., as Plaintiff here admits they are. (*Id.* at 18.) Defendant also argues that Plaintiff's attorney cannot now challenge this characterization because he failed to object to it at the hearing or ask the vocational expert any questions to clarify whether the job was composite in nature. (*Id.* at 19.) Defendant also argues that, even if Plaintiff performed other duties outside of the sedentary ones required for an administrative assistant, the relevant inquiry in this case is whether Plaintiff can perform the job as it is generally performed in the national economy, not as Plaintiff actually performed it. (*Id.* at 18.)

Third, Defendant argues that the ALJ sufficiently developed the record as to opinion evidence. (*Id.* at 20-23.) More specifically, Defendant argues that the ALJ considered the only opinion from Dr. Esposito that included an indication of retroactive application (both of his submitted opinions having otherwise been rendered after Plaintiff's date last insured), but that the ALJ had no duty to recontact him for clarification. (*Id.* at 20.) Additionally, Defendant argues that there is no indication of a failure to develop the record based on the fact that Dr. Ashraf did not submit an opinion until after the ALJ rendered her decision because the record shows that Dr. Ashraf had been sent a request for opinions and records, to which she responded by submitting only treatment records, and Plaintiff's counsel did not indicate to the ALJ that an opinion from Dr. Ashraf was necessary or otherwise request that the ALJ seek such opinion. (*Id.* at 20-22.) Lastly, as to Dr. Ashraf's opinion, Defendant argues that, although Plaintiff has not made such an argument, the Appeals Council did not err in finding that Dr. Ashraf's opinion was unlikely to change the ALJ's decision when denying review of Plaintiff's appeal. (*Id.* at 22-23.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

III.    **ANALYSIS**

A.      **Whether the Step Four Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 9, at 17-21 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As an initial matter, the parties seem to agree that Plaintiff's past work with Beesmer Furniture constitutes past relevant work under the regulations. Specifically, the Court notes that the record establishes Plaintiff worked for Beesmer Furniture from 2003 until 2010, earning between approximately $15,000 and $16,000 in each year except 2003 and 2010. (T. 276-77.) The Court finds that she therefore performed this job long enough and for sufficient earnings for it to qualify as past relevant work.

As to Plaintiff's argument that it is unclear which of her administrative assistant positions the ALJ considered as past relevant work, the Court finds that the ALJ's questions to the VE sufficiently indicate that the ALJ was considering her work with Beesmer Furniture. (*See* T. 187 [in which the ALJ asked the VE whether Plaintiff's past work as an administrative assistant had been performed at a higher exertional level than that outlined in the D.O.T. and specifically discussed Plaintiff's lifting "in the furniture position"].) However, even if there is doubt as to which past job the ALJ was considering, the question still remains as to whether either of these jobs was a composite job, based on Plaintiff's description of both as including additional duties

beyond those described in the D.O.T. for an administrative assistant.[2]  (T. 290, 329.)

"A composite job combines significant elements of two or more jobs, and has no counterpart in the D.O.T." *Noelle v. Comm'r of Soc. Sec.*, 15-CV-1301, 2017 WL 9509957, at *6 (N.D.N.Y. Feb. 13, 2017) (Carter, M.J.) report and recommendation adopted by 2017 WL 945094 (Suddaby, C.J.); (citing SSR 82-61, 1982 WL 31387, at *2 ["A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.  Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to 'be disabled.'"]).  However, where a job is a composite job, it is error for the ALJ to find that the claimant is disabled merely because she can perform the least demanding aspects of her past relevant work. *Long v. Berryhill*, 16-CV-0760, 2018 WL 618119, at *4-5 (W.D.N.Y. Jan. 30, 2018) (collecting cases).

Defendant relies on case law to support her argument that, because Plaintiff has identified a D.O.T. code that would encompass the additional duties she performed in her job as an administrative assistant, her job is not a composite job.  (Dkt. No. 12, at 18 [Def.'s Mem. of Law].)  However, while the theory behind Defendant's argument appears to have some support

---

[2]        The Court notes that, on remand, the ALJ should clarify which administrative assistant job is the basis for the past relevant work finding, including a discussion of whether Plaintiff's real estate-related job meets the definition of past relevant work (particularly whether it constituted substantial gainful activity) if she is in fact relying in part or wholly on that particular past job.

from the case law,[3] the cited cases do not squarely apply to the situation present in this case. In those cases, as well as others identified by the Court, such theory precluded remand where the VE has identified D.O.T. codes for the differing duties encompassed by the plaintiffs' jobs. *See Clark v. Colvin*, 13-CV-1124, 2016 WL 4804088, at *4 (W.D.N.Y. Sept. 13, 2016) (finding jobs of hairdresser and beauty shop manager were not together a composite job because the VE classified her work as both and each job is separately listed in the D.O.T.); *Johnson v. Colvin*, 13-CV-6319, 2014 WL 1394365, at *7 (W.D.N.Y. Apr. 9, 2014) (finding jobs were not composite jobs where the VE identified two occupations, pharmaceutical packaging inspector and camera inspector, that plaintiff could perform, because both of those jobs were listed in the D.O.T.). That is not the case here. Rather, the VE identified only the occupation of administrative assistant as past relevant work; she did not identify any D.O.T. code related to the furniture/decorating duties Plaintiff has described. Even if it appears that those additional duties might be encompassed by the D.O.T. codes identified by Plaintiff, neither the parties to the action nor the Court are a vocational expert with the knowledge to make that assessment, and such finding should more properly be made by the ALJ rather than by a reviewing court. Rather, because it appears that the ALJ failed to appropriately consider the possibility that Plaintiff's job was a composite one despite her report of the additional duties that (for whatever reason) appear

---

[3]        The Court notes, however, that there is a competing theory that the fact that there are multiple D.O.T. codes that encompass the plaintiff's job duties is an indication that the job is in fact a composite job. *See Weiser v. Berryhill*, 16-CV-0763, 2018 WL 6011163, at *4 (W.D.N.Y. Nov. 16, 2018) (citing cases); *accord, Long v. Berryhill*, 16-CV-0760, 2018 WL 618119, at *4 (W.D.N.Y. Jan. 30, 2018). This theory is supported by the Social Security Administration's own Program Operations Manual System ("POMS"), a manual that provides guidance to agency decision makers, which states that "[t]he claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." POMS DI 25005.020.B.

to have been disregarded by the VE, and because there is no testimony from the VE as to that issue, remand is required for the Commissioner to engage in further development of the record to enable review of this issue. The ALJ should then use any new VE testimony and/or other relevant new evidence to engage in a specific analysis of whether Plaintiff's past relevant work is a composite job. The Court notes that the question of whether Plaintiff's past relevant work is a composite job is of great importance to the overall disability analysis because, if it is in fact a composite job, the ALJ would not be permitted to rely solely on the sedentary aspects of the administrative assistant occupation, and therefore it is likely that Plaintiff would be unable to perform her past relevant work, necessitating a Step Five finding. *Long*, 2018 WL 618119, at *4.

Although, upon receiving further evidence from a vocational expert or other source, the ALJ might ultimately conclude that Plaintiff's job was not a composite job, the Court finds that further development of the record, particularly in the form of VE testimony as to Plaintiff's past relevant work, is required to review whether the ALJ's finding is correct. Consequently, the Court finds that remand is warranted on this issue.

**B.     Whether the ALJ's RFC Finding and Evaluation of Plaintiff's Symptoms are Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative as to the RFC finding for the reasons stated in Defendant's memorandum of law (Dkt. No. 12, at 7-16 [Def.'s Mem. of Law]) but in the negative as to the analysis of Plaintiff's symptoms for the reasons stated in Plaintiff's memorandum of law (Dkt. No. 9, at 12-17 [Pl.'s Mem. of Law]). To those reasons, the Court adds the following analysis.

As to the ALJ's RFC, Plaintiff argues that the ALJ (a) failed to support her findings with evidence, and (b) erred in rejecting the various medical source opinions and relying instead on her own lay opinion.  (Dkt. No. 9, at 12-17 [Pl.'s Mem. of Law].)  The Court finds both of these arguments unpersuasive.

The ALJ provided copious discussion of and citations to medical evidence supporting the weight she chose to afford to the medical opinions and the RFC, including the examination findings of the sources who rendered the medical opinions.  (T. 15-17.)  Plaintiff's argument that the ALJ's findings do not contain any reference to supporting evidence is completely baseless.

The ALJ additionally provided sufficient reasons for declining to rely on most of the opinion evidence provided by treating and consultative sources.  The ALJ afforded little weight to the two opinions from treating physician Dr. Esposito: the first (from May 2, 2017) because it did not apply to the period before Plaintiff's date last insured, was inconsistent with the "generally mild findings" on examinations and was rendered a few weeks after Plaintiff's right hip replacement surgery; and the second (from April 22, 2017) because it was not relevant to the period before the date last insured and was rendered only a few weeks after the hip replacement surgery.  (T. 16.)  As an initial matter, the Court agrees with the ALJ that the April 22, 2017, opinion does not contain any indication that it is meant to apply prior to Plaintiff's date last insured of December 31, 2015, and therefore is of little probative value.  (T. 680-84.)  *See also Brooks v. Comm'r of Soc. Sec.*, 16-CV-0531, 2017 WL 1655211, at *3 (N.D.N.Y. May 2, 2017) (Carter, M.J.) (finding that a treating physician's opinion was not relevant to the plaintiff's Title II claim because it was rendered well after the date last insured and did not indicate that it was meant to be retroactively applicable); *Quimby v. Comm'r of Soc. Sec.*, 09-CV-0020, 2010 WL

2425904, at *9 (D. Vt. Apr. 13, 2010) (finding rejection of a physician's opinion that was prepared more than six years after the date last insured was proper because it did not indicate that it was expressing an opinion as to the plaintiff's functioning during the relevant period).  As to the May 2, 2017, opinion the ALJ provided good reasons for affording it little weight (despite erroneously indicating that it did not apply to the period before the date last insured) by indicating that it was not consistent with the overall medical evidence.  *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (indicating that, after considering the relevant factors for assessing a treating physician's opinion, the ALJ must set forth his reasons for the weight assigned to that opinion and provide "good reasons" for not crediting the treating physician's opinion); *see also Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"); *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (Mordue, C.J.) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.").  Although the evidence variously shows swelling in the hands, wrists, knees and ankles, decreased (sometimes severely) range of motion in the hips, abnormalities in gait, and degenerative changes in the spine, they also show that Plaintiff generally had acceptable range of motion in her hands, wrists, knees and wrists despite swelling and fairly good strength and sensation.  (*See e.g.*, T. 351-52, 354, 360, 375-76, 380-81, 385-89, 392-94, 397-404, 415, 419-21, 432-33, 443-45, 516, 525, 538, 540, 542).  No evidence from before the date last insured supports Dr. Esposito's opinion that Plaintiff required use of a cane to ambulate.  The Court therefore finds that the ALJ's finding that the record supported serious limitations, but not to the extremely limiting extent opined by Dr. Esposito, is supported by substantial evidence.

On July 28, 2015, consultative examiner Rita Figueroa opined that Plaintiff would have limitations in activities requiring moderate exertion due to her impairments, an opinion to which the ALJ afforded slight weight because the ALJ found that the record as a whole supported that Plaintiff was more limited than opined by Dr. Figueroa, but that Dr. Figueroa's opinion was supported to the extent it indicated Plaintiff was not completely precluded from performing postural activities and hand movements. (T. 17.) In support of this finding, the ALJ cited Dr. Figueroa's own objective observations, including that Plaintiff did not use an assistive device, had full range of motion in the joints of her upper extremities, knees and ankles despite swelling, limited hip range of motion on exterior rotation, and normal grip strength and dexterity. (T. 443-445.) The ALJ therefore properly provided a valid reason for declining to rely heavily on Dr. Figueroa's opinion, and the Court notes that any error in assessing Dr. Figueroa's opinion would nonetheless be harmless because the ALJ found that Plaintiff was more limited. *See Yargeau v. Berryhill*, 16-CV-0706, 2018 WL 1335388, at *3 (W.D.N.Y. Mar. 15, 2018) ("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand."); *Baker o/b/o/ Baker v. Berryhill*, 15-CV-0943, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record."); *Butler v. Comm'r of Soc. Sec.*, 16-CV-0500, 2017 WL 2834482, at *6 (N.D.N.Y. June 29, 2017) (Dancks, M.J.) (noting that it did not help the plaintiff's appeal to argue that the ALJ should have adopted more limitations from the physician's opinion because that opinion was "significantly less restrictive" than the RFC).

The ALJ also afforded little weight to an opinion from consultative examiner Dr. Kumar from May 12, 2017. (T. 17.) The ALJ indicated that this opinion was rendered more than a year after the date last insured, and the Court can find no indication that this opinion was meant to apply retroactively. (*Id.*) *See Brooks*, 2017 WL 1655211, at *3; *Quimby*, 2010 WL 2425904, at *9. Additionally, because Dr. Kumar did not treat Plaintiff or become familiar with Plaintiff's conditions prior to the date last insured, and because the evidence suggests that Plaintiff's condition had worsened after her date last insured, the Court finds that the ALJ appropriately rejected her opinion for lack of relevance.

Furthermore, the ALJ's decision to decline to rely heavily on any medical opinion does not automatically indicate that the ALJ improperly relied on her own lay opinion. An ALJ is not required to rely on any one opinion, so long as she is relying on the evidence as a whole to inform her decision. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, . . . a medical source statement or formal medical opinion is not necessarily required.") (citations omitted); *Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) ("[B]ecause the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion.'"); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The ALJ provided reasons as to why the medical

opinions did not accurately reflect Plaintiff's functioning, citing to specific evidence, none of which involved interpretation of raw medical data beyond the ALJ's expertise. Overall, the Court finds that the ALJ's weighing of the opinion evidence is supported by substantial evidence.

As to the ALJ's evaluation of symptoms, the Court is not wholly convinced that the ALJ's assessment conforms with the letter and spirit of the relevant law. The ALJ reiterated some of Plaintiff's subjective reports about her functional abilities and found that those reports were "not entirely consistent with the medical evidence and other evidence in the record;" in support of this finding, the ALJ cited to objective medical evidence, noting objective exam findings, notations from her doctor, and some treatment modalities (particularly medications) that she received. (T. 14-18.) In particular, the ALJ stated that

> In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant. The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described above.

(T. 17-18.)

SSR 16-3p states that, when assessing the intensity, persistence and limiting effect of a claimant's symptoms, the ALJ should consider the objective medical evidence, but that a claimant's statements as to intensity, persistence, and limiting effects cannot be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016). Other evidence that must be considered includes (a) the claimant's own statements, (b)

statements from medical sources, (c) statements from non-medical sources, and (d) the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).[4] *Id.* at *6-7.

Despite SSR 16-3p's express statement that the ALJ may not rely solely on inconsistencies with the objective medical evidence, the ALJ appears to have done just that in relying very heavily on the objective examination findings. The ALJ's boilerplate statement that "the factors set forth in 20 C.F.R. 404.1529(c) and 416.929(c) support the residual functional capacity that has been found" does not rescue the ALJ's deficient analysis because she has otherwise offered no indication that she truly considered these factors in any detail. Although the ALJ is not required to engage in a slavish and formulaic recitation of all of these factors, the ALJ's complete failure to show how she considered them in any substantial or meaningful way does not, to this Court, appear to comply with SSR 16-3p. The Court therefore instructs the ALJ that, on remand, she should conduct a more specific assessment of Plaintiff's symptoms consistent with SSR 16-3p.

As a final note, the Court notes that there is some question as to whether Dr. Ashraf's August 22, 2017,[5] opinion was submitted to the Commissioner before the ALJ rendered her decision. Defendant argues that Dr. Ashraf's opinion was submitted "to the Appeals Council

---

[4] These factors are listed as (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate and aggravate symptoms, (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms, (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms, and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p.

[5] Although submitted well after Plaintiff's date last insured of December 31, 2015, Dr. Ashraf's opinion states that the opined limitations were present on or before that date.

after the ALJ's decision," but this assertion is not supported by the record. (Dkt. No. 12, at 20-21 [Def.'s Mem. of Law].) Rather, in her appeal brief filed with the Appeals Council, Plaintiff states that (a) Dr. Ashram's opinion was completed the day after the hearing, and (b) it "was submitted to the claimant's electronic folder as soon as our office received it on 09/06/17," but that "[i]t appears that it never became an exhibited file." (T. 265.) Consistent with this statement, Dr. Ashraf's opinion does not appear in the list of exhibits considered by the ALJ. (T. 20-22.) Defendant is correct that the Appeals Council considered evidence from Dr. Ashraf when deciding to deny review, finding that there was not a reasonable probability that it would change the outcome of the ALJ's decision. (T. 2.) However, despite this finding, the Appeals Council did not include Dr. Ashraf's opinion or the accompanying medical records as exhibits to their determination. (T. 4.) Due to this confusion and given the fact that Dr. Ashram's opinion will in any event be part of the record on remand for the errors related to Plaintiff's past relevant work, the Court instructs the ALJ to provide an explicit discussion of Dr. Ashraf's opinion as part of that remand, including her determination as to what degree of weight that opinion merits.

### C.    Whether the ALJ Failed to Properly Develop the Record

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 20-23 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Because the Court is remanding this case based on the ALJ's errors in assessing Plaintiff's past relevant work, the question of whether the ALJ failed to develop the record is essentially moot, as Plaintiff will have the opportunity to submit further relevant evidence as a consequence of the remand. However, the Court briefly states that it nonetheless finds that the

ALJ did not commit any legal error in developing the record in this case. The only missing evidence alleged by Plaintiff is a clarification from Dr. Esposito as to which portions of his May 2, 2017, opinion were meant to apply retroactively to a time before her date last insured. (Dkt. No. 9, at 21-22 [Pl.'s Mem. of Law].) However, Plaintiff has offered no legal authority to support that this failure to seek further clarification constituted a breach of the ALJ's legal duty to develop the record. To the contrary, development of the record is only required where there is a gap in the record that would prevent the ALJ from making an informed decision. *See Murphy v. Comm'r of Soc. Sec.*, 16-CV-1268, 2017 WL 8895352, at *9 (N.D.N.Y. Oct. 24, 2017) (Carter, M.J.) report and recommendation adopted by 2018 WL 851383 (N.D.N.Y. Feb. 13, 2018) (Suddaby, C.J.) ("While the ALJ has a general duty to develop the record, the agency is required to affirmatively seek out additional evidence only where there are 'obvious gaps' in the record."); *Dority v. Comm'r of Soc. Sec.*, 14-CV-0285, 2015 WL 5919947, at *7 (N.D.N.Y. Oct. 9, 2015) (Suddaby, C.J.) (noting no failure in developing the record where there were no obvious gaps in the record); *Butler v. Astrue*, 926 F. Supp. 2d 466, 477 (N.D.N.Y. 2013) (Young, J.) (noting that the duty to make every reasonable effort to obtain relevant evidence from a treating physician requires the ALJ to "request additional evidence if the administrative record does not contain sufficient evidence to make a fair determination"). Dr. Esposito's May 2, 2017, opinion already indicates that the opined limitations were present as of August 2015, so it is unclear what an interrogatory for further clarification on that point would add in this case; the wording of the question on the form appears to indicate that all the limitations opined in the form apply retroactively. (T. 464.) Plaintiff therefore has not shown that the ALJ failed to develop the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to the Commissioner of Social Security

pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.

Dated: July 2, 2019
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge